IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHER DISTRICT OF TEXAS
HOUSTON DIVISION

JIMMY JOE WADE,                      §
                                     §
        *Petitioner*,                §
                                     §
v.                                   §        CIVIL ACTION NO. H-08-2071
                                     §
NATHANIEL QUARTERMAN,                §
                                     §
        *Respondent*.                §

## MEMORANDUM OPINION AND ORDER

Jimmy Joe Wade, a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254 challenging the denial of his release to mandatory supervision. Respondent filed a motion for summary judgment (Docket Entry No. 14), to which petitioner responded (Docket Entry No. 15).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court GRANTS summary judgment and DISMISSES this case for the reasons that follow.

### *Procedural Background*

Petitioner pleaded guilty to the charge of murder with use of a deadly weapon, and was sentenced to life imprisonment on June 13, 1988. The conviction was affirmed on direct appeal. *Wade v. State*, No. 14-88-00520 (Tex. App. –Houston [14th Dist.] 1989, pet. ref'd.). On February 26, 2008, he filed an application for state habeas relief, challenging the

denial of his release to mandatory supervision.  *Ex parte Wade*, WR-23,260-03, at 2. The Court of Criminal Appeals denied relief based on the findings of the trial court without a hearing on May 28, 2008.  *Id*., at cover.

Petitioner filed the instant federal habeas petition on June 25, 2008, claiming that the denial of his release to mandatory supervision constitutes violations regarding equal protection, due process, double jeopardy, the *ex post facto* clause, separation of powers, his plea bargain agreement, and state law in effect at the time he committed the offense.

Respondent argues that these grounds fail as a matter of law and/or are barred by limitations.

*The Applicable Legal Standard*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. §2254.  Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication of the claim was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme

Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonable extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. §2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceedings. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. *Miller-El*, 537 U.S. at 330-31; 28 U.S.C. § 2254(e)(1).

*Protected Liberty Interest*

Petitioner asserts a protected liberty interest in his release to mandatory supervision based on his eligibility under the statutory scheme in effect at the time he committed the

3

underlying offense.  He claims that the denial of that liberty interest constituted a denial of federal due process.

Prison inmates are entitled to protection under the due process clause only when an official action infringes upon a constitutionally protected liberty interest.  *Sandin v. Conner*, 515 U.S. 472 (1995).  Liberty interests emanate from either the due process clause itself or from state law.  *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  The due process clause does not include a right to conditional release before the expiration of a valid sentence.  *Greenholtz v. Inmates of the Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979).  Accordingly, petitioner's due process claims depend on the existence of a constitutionally protected liberty interest created by state law.

At the time of petitioner's commission of the murder offense on May 13, 1987, the Texas statute governing eligibility for release to mandatory supervision provided that an inmate not under sentence for death "shall be released to mandatory supervision" when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced.  TEX. CRIM. PROC. CODE art. 42.12, § 15(c).  In *Ex Parte Franks*, 71 S.W.3d 327, 327-28 (Tex. Crim. App. 2001), the Texas Court of Criminal Appeals determined that the Texas mandatory supervision statute at issue in the present case does not permit a life-sentenced inmate to be eligible for release to mandatory supervision.  The state court construed the plain language of the mandatory supervision statute and explained that "it is mathematically impossible to determine a mandatory supervision release date on a life

4

sentence because the calendar time served plus any accrued good conduct time will never add up to life." *Id*. at 328.

In *Arnold v. Cockrell*, 306 F.3d 277, 279 (5th Cir. 2002), the Fifth Circuit Court of Appeals held that a life-sentenced inmate was not eligible for release to mandatory supervision under the 1977 version of the Texas mandatory supervision statute.  The Fifth Circuit determined that the Texas court's reasoning in *Franks* was determinative because the 1977 version of the mandatory supervision statute was substantively identical to the version of the law at issue in *Franks*.  *See Arnold*, 306 F.3d at 279.  Likewise, the version of the statute in *Franks* and the version applicable to petitioner in the instant case are substantially the same.  *Id*.  To the extent petitioner argues that article 42.12, § 15(c) of the Texas Code of Criminal Procedure only excludes prisoners sentenced to death, his argument is foreclosed by *Arnold*, 306 F.3d at 279.

In rejecting petitioner's habeas claim, the state trial court made the following relevant finding:

> 2.    Life-sentenced inmates are not eligible for mandatory supervision under both prior and amended versions of the statute governing release on mandatory supervision. *Ex parte Franks*, 71 S.W.3d 327 (Tex. Crim. App. 2001).

*Ex parte Wade*, p. 50.  The Texas Court of Criminal Appeals relied on this finding in denying habeas relief.  *Id*., at cover.

It is not this Court's function to review a state's interpretation of its own law, and it therefore defers to the Texas Court of Criminal Appeals' reading of the Texas statute.  *See id.*  Petitioner's assertions in the instant case concerning his eligibility for mandatory supervised release are therefore foreclosed by *Arnold*.  Petitioner fails to show that the state court's decision to deny his due process claim was contrary to or involved an unreasonable application of clearly established Supreme Court law.  *See Arnold*, 306 F.3d at 279; *Franks*, 71 S.W.3d at 328.  *See also Stewart v. Crain*, 308 F. App'x 748 (5th Cir. 2009) (rejecting claim by life-sentenced Texas prisoner that denial of mandatory supervised release violated his civil rights).  To the extent petitioner claims that a life sentence "is equivalent to sixty years" and that an inmate "would be eligible for mandatory supervised release after serving twenty years," this argument was rejected by both the Texas Court of Criminal Appeals in *Franks* and the Fifth Circuit in *Arnold*.  *See Pohl v. Livingston*, 241 Fed.App'x. 180 (5th Cir. 2007).

As a life-sentenced inmate in Texas, petitioner is not eligible for mandatory supervised release under the Texas statutory scheme, and he enjoys no protected liberty interest in being released to mandatory supervision.  His due process and related claims asserting a constitutionally-protected right to mandatory supervised release are without merit, and respondent is entitled to summary judgment dismissing those claims.

*Equal Protection*

Petitioner argues further that, by denying him early release on mandatory supervision based on his status as a life-sentenced inmate, officials unreasonably discriminated against him in violation of the equal protection clause.  The equal protection clause requires that similarly situated persons be treated alike.  *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  To establish an equal protection claim, a petitioner must demonstrate that (1) the state created two or more classifications of similarly situated prisoners that were treated differently; and (2) the classification had no rational relation to any legitimate governmental objective.  *See Johnson v. Rodriguez*, 110 F.3d 299, 306-07 (5th Cir. 1997). A petitioner may also state an equal protection claim if he alleges that his disparate treatment was motivated by an illegitimate animus or subjective ill-will.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (discussing equal protection claims brought by a "class of one").

Petitioner does not allege or show that he has been treated differently from other similarly situated inmates who have been convicted and sentenced to life in prison. Likewise, he alleges no facts showing that he has been singled out for ill treatment for any impermissible reason.  Petitioner has not demonstrated the requisite disparate treatment and, therefore, he fails to establish a denial of equal protection.  It follows that he further fails to show that the state court's decision to deny his claim was contrary to, or involved an

7

unreasonable application of, clearly established Supreme Court law.  Respondent is entitled to summary judgment dismissing this claim.

### Double Jeopardy

Petitioner contends that his denial of early release to mandatory supervision violates his constitutional protection against double jeopardy.  The double jeopardy clause  protects against: (1) prosecution of the same offense after acquittal; (2) prosecution of the same offense after conviction; and (3) multiple punishments for the same offense.  *United States v. Berry*, 977 F.2d 915, 918 (5th Cir. 1992).  Petitioner has received one punishment for each of his offenses, and he was not eligible for mandatory supervised release at the time he committed the offense.  *See Arnold*, 306 F.3d at 279.  That petitioner is ineligible for release to mandatory supervision due to his status as a life-sentenced state inmate neither implicates nor violates the double jeopardy clause under *Berry*.  It follows that he further fails to show that the state court's decision to deny his double jeopardy claim was contrary to, or involved an unreasonable application of, clearly established Supreme Court law.  Respondent is entitled to summary judgment dismissal of this claim.

### Ex Post Facto Law

Petitioner argues that, by denying him eligibility for release on mandatory supervision based on his status as a life-sentenced inmate, officials have violated the prohibition against *ex post facto* laws.

Article I, Section 10 of the United States Constitution prohibits states from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981). To constitute an *ex post facto* violation, a change in the law "must be both retroactive and to a prisoner's detriment." *Hallmark v. Johnson*, 118 F.3d 1073, 1077-78 (5th Cir. 1997). A change in the law is retroactive if it applies to events occurring before its enactment. *Lynce v. Mathis*, 519 U.S. 433, 441 (1997). A law is to the prisoner's detriment if it creates a sufficient risk of increasing the punishment attached to the defendant's crimes. *McCall v. Dretke*, 390 F.3d 358, 363 (5th Cir. 2004).

In this instance, petitioner does not demonstrate that there has been a retrospective change in the law to his detriment with regard to his eligibility for mandatory supervision. As noted above, petitioner was convicted in 1988 for an offense that occurred in 1987. The Texas Court of Criminal Appeals has compared the statute that was in place at the time of the offense and the current Texas mandatory supervision statute and concluded that, where the calculation of the sentence is concerned, they are substantively the same. *Franks*, 71 S.W.3d at 327-28. Both of the provisions have the same effect with regard to a life-sentenced prisoner's eligibility for mandatory supervision. *See id.* Under both versions, "it is mathematically impossible to determine a mandatory supervision release date on a life sentence because the calendar time served plus any accrued good conduct time will never add up to life." *Id.* at 328. Therefore, as the Texas Court of Criminal Appeals noted, Texas has

9

never released life-sentenced inmates to mandatory supervision.  *See id.* at 328 n. 1. This is fatal to petitioner's *ex post facto* claim.

Petitioner cannot show that he is eligible for mandatory supervision under the version of the statute that was in place at the time of the offense and, as such, he has not alleged facts showing that he has been denied eligibility for mandatory supervision as the result of any retroactive change in the law.  Under these circumstances, petitioner has not demonstrated an *ex post facto* violation or shown that the state court's decision to deny his claim was contrary to, or involved an unreasonable application of, clearly established law.  Respondent is entitled to summary judgment dismissal of this claim.

### *Violation of Plea Bargain Agreement*

Petitioner claims that the prosecuting attorney led him to believe that he would only serve twenty calendar years before being released to mandatory supervision.  (Docket Entry No. 15, p. 10.)  He also claims that, had the prosecutor not induced him to plead guilty with the promise of release to mandatory supervision in twenty years, he would have chosen to go to trial.   Petitioner does not challenge the validity of the guilty plea, but rather, contends that the denial of his release to mandatory supervision breached that plea bargain "contract."

Respondent argues that this claim is barred by limitations because it challenges the validity of, or arises directly from, the 1988 guilty plea.  Petitioner disagrees, and alleges that his claim did not arise until May 14, 2007, when he "discovered" that his serving twenty years did not entitle him to mandatory supervised release.  (Docket Entry No. 15, p. 5.)  He

10

filed his application for state habeas relief on February 26, 2008, approximately two and one-half months before expiration of the one-year limitation under 28 U.S.C. § 2244(d)(1)(D). The Texas Court of Criminal Appeals denied habeas relief on May 28, 2008, and petitioner filed the instant petition approximately one month later, on June 25, 2008.  The Court does not find that petitioner's claim is barred by limitations under section 2244(d)(1)(D).  This finding, however, affords petitioner no relief, as his underlying claim lacks merit.

In rejecting petitioner's habeas claim, the state trial court made the following relevant findings:

> 3.     Applicant agreed to plead guilty with no agreed recommendation for punishment and the State reserved the right to argue appropriate punishment at a pre-sentence investigation hearing.

> 4.     Applicant fails to show that his plea of guilty was induced by a promise of a maximum term of twenty years in prison.

*Ex parte Wade*, p. 50.  The Texas Court of Criminal Appeals denied the application without written order based on the findings of the trial court without a hearing.  *Id.*, at cover.

Petitioner here presents no probative summary judgment evidence showing that the Texas Court of Criminal Appeals's denial of his claim was unreasonable, or that the trial court unreasonably determined the facts presented.  Petitioner's unsupported and conclusory allegation regarding what the prosecution "led him to believe" is insufficient to raise a genuine issue of material fact precluding summary judgment.  *See Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (holding that petitioner's conclusory allegations failed to establish

valid ineffective assistance of counsel claim); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (reemphasizing that "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding").

Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, federal law, or that it was an unreasonable determination of the facts based on the evidence in the record.  Respondent is entitled to summary judgment on this issue.

### Separation of Powers Doctrine

Petitioner argues further that, by allowing the "state executive branch" to interfere with powers reserved to the legislature, Board officials have violated his rights under the separation of powers doctrine. This claim does not raise a cognizable ground for federal habeas relief, as such doctrine "is not enforceable against the states as a matter of federal constitutional law." *Attwell v. Nichols*, 608 F.2d 228, 230 (5th Cir. 1979).  Petitioner's claim concerns a matter of state law only, and presents no federal question. *Id.*  Absent a violation of the federal constitution, petitioner's assertion does not warrant federal habeas corpus review. *See Estelle*, 502 U.S. at 67-68.   Respondent is entitled to summary judgment dismissal of this claim.

### Conclusion

Respondent's motion for summary judgment (Docket Entry No. 14) is GRANTED. The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH

PREJUDICE.  A certificate of appealability is DENIED.  Any and all other pending motions are DENIED AS MOOT.

The Clerk is to provide a copy of this order to all parties.

Signed at Houston, Texas, on August 19, 2009.

_____
Gray H. Miller
United States District Judge

13